Good morning, Your Honors, and may it please the Court, my name is Omar Gonzales-Pagan and I'm representing the plaintiffs in this case, five transgender adolescents from Oklahoma and their parents are guardians. Since the state enacted and has enforced Oklahoma Senate Bill 613, the health and well-being of transgender adolescents is in danger. They currently face irreparable harm and the rights of their parents have been interfered with in an unconstitutional way. The district court below erred in denying the motion for a preliminary injunction because it applied the wrong standard. Here, plaintiffs are likely to succeed on their claims because the law at issue discriminates on the basis of sex and cannot be justified under heightened scrutiny. It further classifies facially on the basis of sex and transgender status and it was enacted with the purpose of enforcing gender conformity and to single out for disparate treatment transgender youth in Oklahoma. What is more, it constitutionally, it interferes with the constitutional right, the fundamental right of parents to direct the medical care of their parents in Jepson. Do you agree that what you're asking is to extend the constitutional right beyond where it exists now? No, your honor. I believe that this court in Jepson and the Supreme Court in Parham define the contours of the fundamental parental right at issue. Those contours are to direct the medical care of children and to do so following the advice of medical professionals. In speaking of that right in Jepson, the court was speaking of the substantive due process right to direct medical care and in Parham the Supreme Court was defining the rights and prerogatives of adults and children and spoke of that plenary right of parents. What if the child wants the care and the parent doesn't? Child's out of luck under your rule? If the child wants the care and the parent doesn't, there would be no interference with a parental right. And not only that, but how care is provided, it requires the informed consent of parents and the informed assent of adolescents. So the parent rules over the child? In most circumstances, yes. Well, is there a circumstance where that wouldn't be so? And if so, describe it. There may be circumstances in the abstract where a parent denying medical care to a child may be akin to medical... I'm talking about our world, this case with the gender treatment. In this case, in order to access care, both under the standard of care, but also under the law, parental consent is required in order to obtain the care. So there are laws that prohibit certain treatments for adults. Would that law, if it's applied to a minor, not be allowed because the parent can decide, even though the government could keep an adult from having certain care? You're saying it could not prevent a child from having that care if the parent wants it? No, Your Honor, that would be one of the limiting principles of the contours of the right at issue. The care has to follow, has to be widely accepted and available. Here, this is care that is not otherwise unlawful. It is not prohibited for adults, and the services and procedures, in fact, are not even prohibited for other minors. It is only prohibited in the terms of the statute when the perception of the minor of his or her gender or sex differs from their birth sex. This is not the case of a non-widely available treatment that a parent is trying to obtain. The opposite. It is widely available treatment, both legally and in terms of acceptability within the medical community, that is otherwise being prohibited and banned by the state because it is being provided to affirm a transgender minor's identity. Let me ask you about your equal protection argument. Yes. This is a real difficult issue because you have kids who are suffering greatly, and you don't want to do permanent harm to them, and each side thinks it's preventing some of the harm to the child. You've got the group you represent who think that if the child does not get this sort of surgical and hormonal treatment before 18, then there will be terrible harm. You've got people who think if you give this treatment, surgical or hormonal, to children, that they may never be able to have children themselves, and even after they change their mind, if they change their mind, and they're very worried about that. Why, though, does either side, why is either side being sexist about that? They're all being, they're all, but they're both being, they're both very worried about the children and want them to be better. So why is that, I mean, that's a very debatable issue, as we've heard. There are medical people who disagree on this, but why is that a sex discrimination issue? So taking the question on its, at its face, Your Honor, this is a sex-based classification, facially. Of course, the state has the ability to regulate the provision of medical care, but it cannot do so on suspect or quasi-suspect lines. When they do so, they must justify that gender-based classification, and here, this is not a situation in which particular procedures or services are being prohibited writ large. This is a situation in which the provision of puberty-delayed medication or the provision of hormones, which can be provided with similar risk to other minors, is being prohibited when it's only provided to affirm a minor's transgender identity. Going to the question of this being a difficult issue, parents are grappled with this issue. One need only read the declaration of Brandon Bowe's parents to realize that the parents struggled about what the right decision is, but ultimately, it is for the parents, along with the adolescent and the providers, to make that decision, not for the state to interfere with those private medical decisions and decide that for this group of people, they are not allowed to be able to make those important private medical decisions and that they're not allowed to obtain medical care that is otherwise permitted to others, yet notwithstanding similar risk. You said it's sex discrimination on its face, but if you state it in terms of you should not be able to make irreparable changes to a minor's body by certain treatments that can do that, why is that? The changes are different depending on the body of the particular child. If the child has female organs, then that's different from if the child has male organs. But why is that? I mean, it's stated in a sex-neutral manner, is it not? No, Your Honor. It is both stated and operates entirely based on sex. In order to determine whether treatment is banned, one must determine and consider the birth sex of the minor and whether their identity is consistent or not with their birth sex. That operates completely on sex-based lines. Just to give an example, consider a plaintiff, Brandon Bowe. Brandon is a transgender male. He was assigned female at birth. He requires and needs testosterone, has obtained testosterone as treatment for gender dysphoria. It was deemed medically necessary by his providers. His parents considered it carefully with him. They provided informed consent and assent. He, under the law 6.1.3, is not able to obtain that treatment. But if you had Joe Smith, who was assigned male at birth... But it's not... It doesn't defame the child to say the child has different sex characteristics, different sex organs. There can never be a distinction between male and female based on their sex organs. And that's what we're talking about. And we have, you know, there's a statement in the recent decision of Dobbs, which I think you just wrote off without really addressing. The regulation of a medical procedure that only one sex can undergo does not trigger heightened constitutional scrutiny unless the regulation is a mere pretext, etc. And that's what we're talking about. You can't remove the testicles from a woman. Well, Your Honor, just to be clear, most of the care that we're talking about does not in any way involve general surgery. Yes. So I just want to be emphatically on the record on that. Okay. Maybe you're not... I think you lost... You don't have standing to challenge that in the But I'm just informing the court that general surgery is not something that is performed by minors. Okay. But the hormone treatment can do this also. The hormone treatment may have an effect on fertility. It is not a sterilization as the state would posit it is. In fact, many people who obtain hormone treatment, if they want to obtain a child, either cease the treatment to go through and be able to obtain a child or to go through fertility preservations. It is not a guarantee nor a certainty that there will be fertility in any event, fertility impairment. But in any event, those are risks that are discussed with the parent and the adolescent as they are making that decision. Many other medical treatments impair or affect fertility, including cancer treatment for minors. To follow up with Judge Hartz's comment and try to get us back to that, I'm looking at Judge Sutton's opinion in LW, and here's what I need help from you on. As he says, under each law, which was Tennessee and I forget which, no minor may receive puberty blockers or hormones or surgery in order to transition from one sex to another. Such an all marks of sex discrimination. It does not prefer one sex over the other. In other words, it's not as though males are allowed to have it and females aren't or vice versa. Everybody is barred from having it, and I think that's what Judge Hartz is getting at is the difference is the anatomical difference. It's not something that's an invidious sex discrimination. So help me to understand why Judge Sutton is wrong when he says that. Yes, Your Honor, and so returning to the point about Dobbs and Judge Sutton's opinion in LW, this is entirely different from Dobbs' reiteration of the rule announcing adulting. The question was, are you pregnant? No, no, no, if you want to limit that language to the one source, the one case that involved it, you can try that, but the language is broader than that. The language encompasses this case, does it not? No, Your Honor, because here no procedure is banned for everybody. That is what was an issue in Dobbs, and that is the coverage that was an issue in Geduldek. Here, it is not banning the provision of hormones for everybody. That would be a different situation. That would be akin to here, it is the provision of that care solely for a particular group when the minor has an identity inconsistent with their birth sex that determines whether the care is being provided. It operates by considering the birth sex of the minor, but it is also written in sex-based terms beyond simply describing a procedure or diagnosis. In fact, there's no diagnosis included in Senate Bill 614, and when it speaks to when procedures are banned, it speaks to procedures that would lead to changes that are inconsistent with one's birth sex, or that would lead to masculinization or feminization that would be typical of the opposite sex. Those are the terms of the statute and how it operates. Separate and apart from that, Your Honor, the court in Dobbs held, and that is the law of the land, and in Geduldek, that pregnancy was not a proxy or a facial classification when it came to sex. Here, gender transition and the ability to transition is so closely correlated with being transgender that it is that proxy, and it is a facial classification in that sense. Which sex is it a proxy for? It's not invidious between people who are male at birth and people who are female at birth. It's not invidious in distinguishing them, is it? Well, Your Honor, it is in that it distinguishes for, Your Honor, I see that almost my time is up, that it does distinguish between somebody being assigned a particular sex, somebody being born with a particular sex, a birth sex of male or female, and being able to access treatment if it is deemed consistent with that treatment. Just because there is equal application of the ban, that doesn't excuse that it is a sex-based classification. As this court stated in Free the Nipple, all gender-based classifications are subject to heightened screening, and in fact, in that case, the majority noted that there may be physical differences that are at play. That sometimes may justify the treatment, but it doesn't always justify the disparate treatment. If anything, it doesn't go to whether heightened screening applies, it goes to whether it is justified. Here, that is not the case. Your Honor, I see that my time is way up. Well, in Free the Nipple, men and women were assigned male can obtain testosterone, but a birth-assigned female cannot. Not only that, there is the reality that, ultimately, the Equal Protection Clause, as with Title VII, focuses on the individual and whether sex is being taken into account. That is what is happening here. Not only does it operate on the basis of sex, it focuses on the individual and determines whether their sex, birth sex, is consistent with their identity in order to access treatment. That is also the definition of being transgender, which I would argue and rely on our briefs, is independently subject to heightened screening, separate and apart from sex. Thank you, counsel. Thank you. Your Honor, if I may, if I could have the temerity to reserve one or two minutes for rebuttal. We'll see. The purpose of counsel is to show temerity. There's no problem with that. Whether we abide your wishes is something different. Thank you, Your Honors, and may it please the Court. My name is Gary Gaskins. I represent the Oklahoma Attorney General, Gittner Drummond, and the other state defendants in this case. At the counsel table with me is Zach West with the Oklahoma Attorney General's Office and Craig Bouchon, who is a private attorney representing the OU health defendants. I will be the only one speaking for the appellees today. Last year, Oklahoma joined about 19 other states in enacting laws preventing doctors from providing physically healthy children, powerful cross-sex hormones, and surgeries for the sole purpose of treating gender dysphoria. So far, the 6th and 11th Circuits have reversed preliminary injunction grants. The 8th Circuit affirmed an injunction grant but recently agreed to hear the summary judgment appeal in bunk. They did? We tried to check that. How recently was that, that they voted to unbunk that? I believe it was October. Similar to the claimants in the 6th Circuit LWV Scrimmetti case, the plaintiffs here do not argue that the original fixed meaning of the due process or equal protection guarantees covers their claims. As a result, I think the Scrimmetti Court's framing of the issue is appropriate here. Specifically, Judge Sutton in Scrimmetti said that this, quote, prompts the question whether the people of this country ever agreed to remove debates of this sort over the use of innovative and potentially irreversible medical treatments for children from the conventional place for dealing with new norms, new drugs, and new public health concerns, the democratic process. And the answer to that question is no. The District Court in Scrimmetti or the District Court quoting Scrimmetti held that we look to democracy to answer pioneering public policy questions, meaning that federal courts must resist the temptation to invoke an unenumerated guarantee to substitute their views for those of the legislature's. Well, we're not going to ignore the equal protection clause. And there were a couple points made by the opposing counsel I'd like you to address. So you can use testosterone to treat males for certain things, but you can't use testosterone if it's to help for gender transformation. Why is that not a sex discrimination? Well, I think first under the equal protection clause, right, equal protection really keeps governmental decision makers from treating persons differently who are on all relevant respects alike. And so an example there, those are different treatments. Those are different treatments, so I don't know if the boys and the girls are necessarily similarly situated when they're seeking testosterone or estrogen. I'd also point that the FDA has not approved these drugs for those purposes. Well, that might be a justification for treating them differently, but okay, I just wanted to get your response to that, but I'm not sure the fact that the FDA hasn't approved the drugs for this purpose addresses the classification issue. Right. So, right, I mean, there's a difference between giving boys testosterone and giving girls testosterone. I thought that the district court found that the facial distinction made here is between adults who are ready to make life-altering decisions and minors, at least in the eyes of the legislature, are not. So the distinction is not sex. The distinction is age, and the distinction is the medical condition. The district court found that, for example, the hormones when used to treat endocrine disorders, the treatment protocols bring the patient's body back to the hormonal states, they would have been in but for the disorder. If they're used for some other purpose, if a girl is being given testosterone, that's not bringing her hormonal states back to where they would be but for whatever disorder. So I think the law is making a distinction between the age and the medical condition that is being treated. Well, to switch a bit from equal protection to very significant decisions in our life, but there are a lot of decisions that minors, that are made for minors that have that effect, from schooling to religion to other things like that. Why isn't the parent who does have that ability and in our society is allowed to exercise that authority in many ways? Why does that not answer the problem of a child making this decision? Well, I guess I first start off with the Dobbs Court emphasized that health and welfare laws are entitled to a strong presumption of validity. We already talked about... We're talking about specifically in the context of minors now. I understand. So I first point out to this court in the Rutherford v. United States case that this court held that a terminally ill cancer patient did not have a right to take whatever treatment they wish regardless of whether the FDA regarded the medication as effective or safe. Abigail Lyons for Better Access to Development Drugs v. Von Eschbach from the D.C. Circuit in 2007 said, there's no fundamental right deeply rooted in this nation's history and tradition of access to experimental drugs for the terminally ill. So if a terminally ill person is not entitled to take drugs that are otherwise not authorized by law, I'm not sure how the parents in this situation would be able to overrule the federal government or a state that decides to ban such drugs. Well, so much depends on the standard of review. And I had asked opposing counsel about if boys and girls are treated the same even though the drugs are different, why would that be an equal protection violation? One answer to that might be looking, and I understand it's a Title VII case, but looking at Justice Gorsuch's language in Bostock where he says even though men and women are being treated the same, the man is fired for being too effeminate, the woman is fired for being too masculine, that still is a sex classification. Why does that not travel? Why could we not say the same thing here? I think, I mean, I do know that Judge Gorsuch has previously in his concurring opinion in Students for Fair Visions said that the difference between the Title VII language and the equal protection constitutional provision, that such differently worded provisions should mean the same thing is implausible on its face. So I think that the author of the Bostock decision came out and said that that's not what they meant in Bostock, that this was applicable to equal protection. It's one thing to say that it's different language and might have different consequences. There are exceptions in Title VII for significant business reasons, for example, but in terms of whether you're making a distinction based on gender, shouldn't that analysis be the same under Title VII and under equal protection clause? Well, again, we're having to talk about, I think it goes back to under equal protection, you have to see whether the persons that are being treated differently are of all relevant respects alike. And here, both boys and girls under the age of 18 are being treated the same. They are both not permitted to receive the same sort of treatment. And one thing that I think we haven't even, hasn't been broached yet, but one of the treatments that's at issue in this case is the puberty blockers. And the exact same puberty blocking drug is given to boys and girls. In the same dose, apparently. Same dose. So at least as it relates to the puberty blockers, any claim that that is a problem. And I would also just point out that, right, again, that Dobbs made clear, as we previously talked, that absent pretext, the regulation of a medical procedure that only one sex can undergo does not trigger heightened constitutional scrutiny. Therefore, the fact that boys and girls receive different hormones or have to cut off different body parts to transition from one sex to another does not result in heightened scrutiny. And I, just thinking about, you know, possible absurd results if we were to say today that this is sex discrimination, one thought that I had is, let's go to the states that allow these treatments. And let's say that we have a government hospital and we have a governmental doctor. And the hospital and this governmental doctor treats patients suffering from gender dysphoria. And the hospital puts in place a policy that says, if you're going to treat gender dysphoria with hormones, only boys, only biological boys can receive estrogen and only biological girls can receive testosterone. Surely, such a policy would not be presumptively unconstitutional. Such a policy shouldn't be subject to heightened scrutiny. Just like Oklahoma's law, that sort of policy simply takes into account the differences between the sexes that we've come to celebrate in this country. And I'd also point out, going to the Gidaldig case, that, you know, this idea that maybe boys can receive testosterone for some sort of recreational purpose and girls are not allowed to do that. I do question, one, whether that would justify a standard of care in which Oklahoma puts an affirmative burden on doctors to follow a certain standard of care or risk their license or lawsuits or whatever. But even if that were something that was happening, the Gidaldig Bialow case from 1974 said, the U.S. Supreme Court said, this court has held that consistently with equal protection clause, a state may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others. The equal protection clause does not require a state must choose between attacking every aspect of a problem or not attacking the problem at all. So even if that were something that were happening where boys were getting prescribed testosterone for recreational purposes, which is probably doping in some circles, the fact that Oklahoma doesn't ban that doesn't make it an equal protection violation under Gidaldig. Well, as Judge Hartz noted, what makes this case difficult is whatever is decided, there will be some minor children who are injured. If we say, yes, you're correct, you win, there will be some transgender children who will be harmed by that, who would have been better served to have had the treatment. Why is it not better to leave that with the parents rather than the state? Well, I mean, I, again, with the Dobbs decision, health and welfare laws are given a strong presumption of validity. I think Judge Sutton in the Scrimeti case, I think directly addressed this where he said, given the high states of these policy deliberations, the long-term health of children facing gender dysphoria, sound government usually benefits from more rather than less debate, more rather than less input, more rather than less consideration of fair-minded policy approaches. To prevent legislatures on one side of the debate to have their say while silencing legislatures on the other side of the debate under the Constitution does not further these goals. I don't recollect, and I may be mistaken, I don't recollect Judge Sutton's opinion addressed the due process. Thank you. I, yeah, I don't have that recollection as well. In fact, going back to the idea that the law references sex, I think that Circuit Judge Brousser's concurring opinion, and I guess Tucker did a great job of picking apart the allegation that laws like Oklahoma's discriminate based on sex. Judge Brousser said that the law doesn't distribute benefits or burdens between men and women or arguably use sex as a proxy for other interests. He went on to say, another way to think about it, an injunction against the enforcement of Alabama's law under equal protection principles will not equalize burdens or benefits between boys and girls. It will not require the government to treat boys and girls the same. It will merely force Alabama to either ban puberty blockers or hormones for all purposes or allow them for all purposes. Accordingly, Oklahoma's law, just like Alabama's, doesn't discriminate against sex. It's simply making distinctions between age and a medical condition. And the state of Oklahoma does have compelling justification for this sort of distinction. As we pointed out, there's many things that we don't allow children to do that we allow adults to do. I know there's a debate on both sides on this, but can I finish my summary? He took a little extra time, but don't drag on. Sure, thank you. So, I mean, there's debates on both sides about the efficacy of these treatments, but there are known potential side effects of these drugs, including causing the child to be permanently sterile, cardiovascular issues, issues with bone and brain development. So certainly the state of Oklahoma has an interest in regulating these sort of treatments, especially when we're talking about minors. The law doesn't even allow to talk about that. How does the child's informed consent bear on that? All of the problems, I'm assuming that although they're detailed in the briefs, they may not be detailed in the doctor's office. Right, but I guess the district found that the facial distinction made is between adults who are ready to make life-altering decisions and minors who, at least in the eyes of the legislature, are not. There's many areas of the law where we say that children, even if they're given, you know, if they want to enter into a contract and they're given informed consent of what they're doing, the law still doesn't ratify such a decision. Thank you, counsel. Thank you. And then I may have some questions after that. Thank you, your honor, I appreciate it. Your honor, just briefly, I think Justice Gorsuch's statement in South Bay Pentecostal is pretty instructive here. Just because this involves medical treatment doesn't mean that the judiciary cannot scrutinize the law at issue and that should not leave the field. At the end of the day, Senate Bill 613 represents an unrivaled and unprecedented invasion of a private decision-making of parents, their children, and their doctors. It invades their homes and doctors' offices and imposes extreme harms. It does so discriminatorily and in violation of fundamental protections guaranteed by the 14th Amendment. We ask this court to order the issuance of a preliminary injunction and to prevent further irreparable harm to our clients. Thank you, your honors. I have a question. It's the dog that didn't bark today. I'm surprised. I think the most concerning thing about the briefs in support of your position was the statements that, look, all the major medical associations in this country favor this, so the science is settled and you need to just follow the science. And then you see that in treatment is putting on the brakes other European countries are. And is it fair to say that that's off the table now? That's just not an issue that's being raised that we have to do this because the science is settled by all the medical associations in this country? No, your honor. A couple of points. First of all, I don't believe Denmark in any way has put any restrictions on this care. The state points to three or four examples of countries that have in nationalized health care systems restricted some of this care to clinical trials. And that in any event, are you contending that the science is settled on these issues? Your honor, I believe that it is settled that there are benefits to this care and that there is harm to not providing this care. As with all science of medicine, we do not know everything. And more science and more study is important and necessary. What Senate Bill 613 does is completely stop the development of that knowledge. It absolutely prohibits and makes it unlawful to provide this care under any setting. I think, if anything, the state's examples of other... But the FDA does that all the time. They say you can't use this drug until you've proved its safety and efficacy. There's nothing remarkable about a statute that would do the same thing. The state here doesn't allow for that, your honor. And in any event, those examples, I think, illustrate that what the state did here is not in any way tailored to the interests that they purport to present. Thank you. Thank you. Thank you, counsel. And I'd like to thank everybody in the audience for behaving. It was very nice. We had a sort of argument that is standard in this court. And I hope for those who aren't lawyers here, you can appreciate the way we try to solve problems in this venue. So case is submitted and counsel are excused. I guess we'll need a minute before we're ready for the next case.